UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALICE GLINDA HARVEY, ETC., ET AL    CIVIL ACTION

VERSUS                              NO. 05-3068

GREY WOLF DRILLING COMPANY          SECTION "C"  (2)

ORDER AND REASONS

This matter comes before the Court on motion for summary judgment filed by Grey Wolf Drilling Company, L. P. ("Grey Wolf"). Having considered the record, the memoranda of counsel and the law, the Court has determined that summary judgment is inappropriate for the following reasons.

The plaintiffs sue in diversity for the wrongful death of Robert Joe Harvey ("Harvey") in December 2004. The undisputed facts indicate that Harvey was working for Stokes & Spiehler Offshore, Inc., Stokes & Spiehler, Inc. and Stokes & Spiehler International, Inc. (collectively "Stokes & Spiehler") as a consultant. (Rec. Doc. 94-11). Harvey was working on a rig in Lafourche Parish operated by James A.

1

Whitson, Jr. ("Whitson") under a Daywork Drilling Contract with Grey Wolf. (Rec. Doc. 94-10). Harvey died of a ruptured abdominal aortic aneurysm sometime after allegedly slipping on some icy location boards at the rig. (Rec. Doc. 94, Exh. E). The plaintiffs claim that Grey Wolf was negligent in failing to maintain and inspect the premises, failing to provide a safe place to work, failing to set up an adequate inspection and maintenance schedule of the premises and failing to warn of a dangerous condition. (Rec. Docs. 1, 13, 21).

Grey Wolf moves for summary judgment on three grounds: (1) the presence of snow and/or ice on the location boards was neither a vice, defect nor unreasonably dangerous condition sufficient to impose liability on Grey Wolf; (2) Grey Wolf owed no duty to Harvey because the condition posed by the snow and/or ice was apparent, open and obvious and (3) Grey Wolf owed no duty because the location boards were installed by agents of Whitson and because Grey Wolf did not have custody or control of the location boards. (Rec. Doc. 94, p. 8). Grey Wolf also argues that the presence of the snow and/or ice was a result of *force majeure* and/or "Act of God." (Rec. Doc. 94, p. 22). The plaintiffs argue in opposition that the snow and/or ice had been present for some time prior to the alleged fall, that under the contract between Whitson and Grey Wolf, Grey Wolf was an independent contractor and that Harvey's role and control over

the relevant operations is in dispute for purposes of summary judgment. (Rec. Docs. 50, 101).

The primary provision of the Whitson/Grey Wolf Daywork Drilling Contract cited by the parties provides:

> For purposes hereof, the term "Daywork" or "Daywork Basis" means Contractor shall furnish equipment, labor, and perform services as provided, for a specified sum per day under the direction, supervision and control of Operator (inclusive of any employee, agent, consultant or subcontractor engaged by Operator to direct drilling operations). When operating on a Daywork Basis, Contractor shall be fully paid at the applicable rates of payment and assumes only the obligations and liabilities stated herein. Except for such obligations and liabilities specifically assumed by Contractor, Operator shall be solely responsible and assumes liability for all consequences of operations by both parties while on a Daywork Basis, including results and al other risks or liabilities incurred in or incident to such operations.

(Rec. Doc. 94-10). Grey Wolf relies on Paragraphs 9 and 10 of the Daywork Drilling Contract to support the alleged duty of Whitson and Harvey relative to the location boards:

> **9. INGRESS, EGRESS, AND LOCATION**
>
> Operator hereby assigns to Contractor all necessary rights of ingress and egress with respect to the tract on which the well is to be located for the performance by Contractor of all work contemplated by this Contract. ... Operator agrees at all times to maintain the road and location in such a condition that will allow free access and movement to and from the drilling site in an ordinarily equipped highway the vehicle.

3

*Id.*

> **10. SOUND LOCATION**
>
> Operator shall prepare a sound location adequate in size and capable of properly supporting the drilling rig, and shall be responsible for a casing and cementing program adequate to prevent soil and subsoil wash out. It is recognized that Operator has superior knowledge of the location and access routes to the location, and must advise Contractor of any subsurface conditions, or obstructions (including, but not limited to, mines, caverns, sink holes, streams, pipelines, power lines and communication lines) which Contractor might encounter while en rote to the location or during operations hereunder. ..."

*Id.* The plaintiffs find support for their claims that Grey Wolf owed Harvey the relevant duties in the following provision.

> **12 TERMINATION FOR LOCATION (LIABILITY)**:
>
> *When Contractor has concluded operations at the well location, Operator shall thereafter be liable for damage to property, personal injury or death of any person which occurs as a result of conditions of the location and Contractor shall be relieved of such liability; provided, however, if Contractor shall subsequently reenter upon the location for any reason, including removal of the rig, any term of the Contract relating to such reentry activity shall become applicable during such period.*

*Id.* Both parties have engaged experts, who have issued reports in support of the parties' respective positions as to who had the duty with regard to the location boards.

In addition, deposition testimony varies as to whether Harvey himself was responsible for the condition posed by the snow and/or ice.[1]

With regard to Grey Wolf's arguments concerning the condition posed by the presence of the snow and/or ice, the Court finds that the relevant issue pertains to the length of time the condition existed which, according to deposition testimony, exceeded a day. For present purposes, this circumstance creates a genuine issue exists as to whether this condition was, indeed, "temporary" or an "Act of God."

Although an issue of law, the existence of a duty on the part of Grey Wolf is also not susceptible to summary judgment. Notably lacking from the record is a copy of any Whitson/ Stokes & Spiehler agreement defining the rights and obligations between them. In addition, a complete copy of the Stokes & Spiehler/Harvey agreement is also missing from the record. (Rec. Docs. 94-11, 40-13). Although it would appear that Grey Wolf operated "under the direction, supervision and control" of Whitson under the primary provision of the Daywork Drilling Contract, it is not clear whether maintenance of the location boards is one of the obligations assumed by Grey Wolf thereunder. That obligation is necessarily affected by the scope of the contractual

---

[1] The parties apparently assume that the alleged fall caused the death for purposes of this motion.

obligation assumed by Harvey, which can not be ascertained on summary judgment due to the missing Whitson/Stokes & Spiehler and the incomplete Stokes & Spiehler/Harvey agreement.

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by Grey Wolf Drilling Company, L. P. is DENIED.  (Rec. Doc. 94). [2]

New Orleans, Louisiana, this 6th day of July, 2009.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[2] There are no other motions pending in this matter.